Jon D. Graves, Legal Counsel, SC #10554
Hutchinson Correctional Facility
P.O. Box 1568
Hutchinson, KS 67504-1568
Telephone: (620) 625-7253
Jon.Graves@ks.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAVID JOHN DAVIS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-3153-SAC |
| ) | |
| CO BEARDSLEY, CO HOFFMAN ) | |
| CO MICHELS, CO STRANGE ) | |
| Defendants. ) | |
| _____) | |

### REPORT IN "MARTINEZ v. AARON" INVESTIGATION

### CIVIL RIGHTS COMPLAINT

On August 15, 2022, plaintiff David John Davis filed an amended civil rights action pursuant to 42 USC §1983 in the United States District Court for the District of Kansas. (Doc. 6, p.1) At all relevant times plaintiff was an inmate incarcerated in the custody of the Secretary of Corrections of the State of Kansas and was housed at all relevant times at the Hutchinson Correctional Facility.

On September 21, 2022, the Court issued an order directing the preparation of a Martinez report. (Doc. 7)

### SUMMARY OF ALLEGATIONS IN PLAINTIFF'S AMENDED PETITION

1

Plaintiff was an inmate housed at the Hutchinson Correctional Facility (HCF) at the time his cause of action arose on April 5, 2022. (Doc. 6 p.3)

Plaintiff explains in his amended complaint that he was threatened by inmate Collins calling him names because he was a child molester and saying that plaintiff needed to die. Plaintiff told unnamed officers at unspecified times about the threats and didn't feel safe. Plaintiff complains generally that because he is a sex offender and that sex offenders are not protected. (Doc. 6 p.2)

In Count I of his complaint, plaintiff indicates he was transported from one cell to an MRA cell, for no reason, by defendants Beardsley, Hoffman, Strange and Michels. Plaintiff indicates he complained about actions by inmate Collins having something to do with plaintiff's status as a sex offender. Count II doesn't state any cause of action. In Count III of his complaint, plaintiff makes a vague allegation that the defendant officers assaulted and abused him. Plaintiff further complains in a more general sense that officers should correct behavior of other inmates. (Doc.6 pp. 1, 2 and following unnumbered page)

Plaintiff states he has not exhausted his administrative remedies and repeats his complaint that when he complains about the behavior of other inmates toward him that [implicitly] officers do not do their job and correct other inmates because HCF thinks that inmate's behavior is acceptable. That failing fails to protect plaintiff and the reason is because plaintiff is a sex offender. (Doc 6, p.5)

Plaintiff's request for relief asks for officers to be retrained as "guards" and defines that retraining of officers to include looking for possible danger, threats and problems. Plaintiff wants that retraining to fix the behavior of inmates and officers so plaintiff can feel safe and protected

from other inmates. Plaintiff also mentions something about being on protective custody from other inmates. (Doc 6, p. 5)

Plaintiff does not sue defendants Beardsley, Strange, Michels or Hoffman in their individual or official capacities and alleges they were all not acting under color of state law. (Doc. 6 pp. 1-2 and unnumbered page following page 2)

Plaintiff does not seek a jury trial, recovery of his costs and or any additional relief, however he does make a vague reference to actual and punitive damages in Count III of his complaint. Doc. 6, p. 4)

## **UNCONTROVERTED STATEMENT OF FACTS**

### I. **PLAINTIFF POST FILING INFORMATION**

Plaintiff, David John Davis KDOC #93293, is an inmate legally incarcerated in the custody of the Secretary of Corrections, State of Kansas. Plaintiff has one active felony conviction. Plaintiff is currently serving a sentence with no listed earliest release date for the convictions of one count of rape/sexual intercourse with a child less than 14 years of age committed on July 11, 2007. Plaintiff was initially incarcerated with the KDOC on January 13, 2009, had his parole revoked twice and was housed at HCF from October 16, 2018, until he moved to the El Dorado Correctional Facility on August 25, 2022, where he remains at present. (See Kasper Sheet Exhibit 1)

Plaintiff was sent a letter on December 6, 2022, asking him if he wanted to offer any additional statement. Plaintiff has not responded. (Exhibit 2)

## II.     USE OF FORCE AGAINST PLAINTIFF ON APRIL 5, 2022

Plaintiff complains that the use of force against him on April 5, 2022, involved the defendants Beardsley, Hoffman and Strange grabbing plaintiff by the testicles and by his buttocks after his clothing was cut off, with defendant Mitchell (Michels) watching, resulting in him being subjected to cruel and unusual punishment.  A  Prison Rape Elimination Act investigation was commenced as a result. The need to move plaintiff from A3 cellhouse to A1-148, where his clothing was cut off, was made necessary due to his self harming behavior. (Exhibits 3 & 13)

Plaintiff reported to Centurion Registered Nurse Ngoc Son and then to mental health professional Michael Cranston that he had been touched inappropriately on his genitals on April 5, 2022, during the movement by one or more officers. (Exhibit 13)

Plaintiff was interviewed by Agent Lakzadeh April 6, 2022, at which time two pages of notes of the interview with plaintiff was created.  In relevant part, Davis reflected fear of harassment by other inmates.  Plaintiff denied threatening to rape the daughter of inmate Collins, who was also housed in A-3.  That allegation was initially why he was moved to a different cell on April 5, 2022.  Defendants Beardsley, Hoffman, Michels and M.Sgt Rebecca Smith arrived at his A3 cell to move plaintiff.  The movement between cellhouses was uneventful other than plaintiff pushing back on officers at times.  Plaintiff described being slammed by defendant Beardsley after arriving at cell A1-148 before his clothing was cut off.  Plaintiff then stated that his buttocks were touched during that event of cutting off his clothes.  Plaintiff clarified that he was not claiming any penetration occurred and that his genitals were not touched or fondled. (Exhibit 13, pp. 9-10 of report)

Defendant Strange first assisted in the move of plaintiff by removing the mattress from

4

cell A1-148, which is protocol for a cell containing a crisis level inmate until property is authorized by medical staff.  He didn't see plaintiff strike anyone or see anyone strike plaintiff.  He assisted in cutting off plaintiff's clothes, which he understood to be necessary because of plaintiff's threats of self-harm.  Strange was not experienced in cutting off inmate clothing.  He first cut off the t-shirt, but failed to cut off the sleeves.  Then he switched places with defendant Hoffman who was controlling legs and cut off plaintiff's pants and underwear.  In the course of doing so, Strange inadvertently touched plaintiff's bare butt cheek with his elbow, but immediately moved on and finished his job.  Strange stepped out of cell A1-148, but saw a brief surge back into the cell and understood that plaintiff had kicked defendant Michels. (Exhibit 13 p.11 and Exhibit 6)

  Defendant Hoffman had been called to assist in moving plaintiff from A3 to A1.  Hoffman was interviewed on June 2, 2022, and didn't clearly remember everything.  He did remember assisting in escorting plaintiff to A1, helping cut off plaintiff's clothing after plaintiff refused to give up the clothes, made necessary due to plaintiff's threats of self-harm.  Defendant Strange mentioned that he had touched plaintiff's buttock.  Hoffman saw nothing sexual occur.  Hoffman did see plaintiff kick towards defendant Michels.  No strikes, blows or other uses of force occurred beyond holding plaintiff from thrashing around in cell A1-148 while his clothing was being cut off.(Exhibit 13 p. 12 and Exhibit 4)

  Defendant Beardsley assisted in cuffing plaintiff in A3 before going downstairs to A1 and in pat searching plaintiff as they entered A1 housing unit.  Beardsley did not threaten to injure or kill plaintiff at any point during the movement.  Plaintiff pushed against officers as he was moved to A1-148. Beardsley didn't use any physical force on plaintiff inside cell A1-148 beyond holding down an arm while restraints were removed and clothing was being cut off.  No

5

strikes or kicks were made against plaintiff. Plaintiff did kick at staff as they were exiting the cell. (Exhibit 13 p. 14 and affidavit Exhibit 5)

Defendant Michels assisted in moving plaintiff from A3 to A1. M.Sgt Smith directed plaintiff submit to restraints and he did. Restraints were applied by Beardsley. During the movement plaintiff leaned against the officers and also made threats of self-harm. When they arrived at cell A1-148 plaintiff was placed face down on the bed and he began resisting. Hoffman and Strange cut off plaintiff's clothing. Hoffman cut the shirt and Strange removed the pants and underwear. Pressure was not applied to plaintiff except that plaintiff's legs were kept crossed by Michels and Beardsley controlled plaintiff's first hand after it was uncuffed. As the officers left the cell plaintiff kicked Michels in the leg, resulting in the issuance of a disciplinary report to plaintiff for battery. (Exhibit 13 p. 16 and affidavit Exhibit 8)

M. Sgt. Rebecca Smith went to A3 to remove plaintiff after plaintiff made threatening statements to another inmate in A3. She took defendants Beardsley, Hoffman and Michels with her. Plaintiff didn't want to move and threatened to harm himself. Cell A1-148 was emptied of all items and plaintiff was placed into his cell with Strange assisting in removing plaintiff's clothes. Smith couldn't see into the small cell, but remained outside and listened. She did not hear anything that sounded like resistance. Plaintiff's glasses were left in his cell. Plaintiff broke them and cut himself multiple times, which resulted in him being moved to the clinic and put on crisis level. (Exhibit 13, p. 15 and affidavit Exhibit 7)

Officer McCammon observed the latter part of the movement of plaintiff to A1 cellhouse. He saw Beardsley and Michels escort plaintiff toward cell A1-148. Plaintiff was crying, upset, yelling and belligerent. He apparently didn't want to go to that cellhouse. This officer was able to observe plaintiff being placed on the concrete bed in the cell, but saw no other physical force

applied. Plaintiff didn't protest at the time, but afterward made a threat to file 3 or 4 PREA complaints against staff in an apparent attempt to manipulate his housing situation. (Exhibit 13 p. 17)

After the investigation was completed, Agent Lakzadeh found the PREA complaint was unfounded and did not occur. (Exhibits 3 & 13)

Security video from various perspectives documents the entire movement of plaintiff from inside A3 cellhouse to when he was delivered to Cell A1-148. A highly detailed summary of the relevant video was created by the Enforcement, Apprehension and Investigator and investigator Abriam Lakzadeh. There is no camera pointing directly into cell A1-148. (Exhibit 3 and Exhibit 13 pp. 5-8)

The security video is also attached. Due to the size of the digital file, counsel will seek to file the video conventionally. Plaintiff cannot possess the video, but will be permitted to view it upon request.(Exhibit 14)

Plaintiff received disciplinary reports for kicking defendant Michels and for threatening Collins' daughter. (Exhibits 11 & 12)

Plaintiff was issued disciplinary report 22-04-029 for threatening or intimidating another inmate by threatening to rape the daughter of another inmate in his living unit. Plaintiff pled not guilty. He was convicted as charged, appealed the conviction to the secretary of corrections and received a losing decision on June 7, 2022. Petitioner did not appeal this conviction to district court. (Exhibit 11)

Plaintiff was issued disciplinary report 22-04-030 for battery of defendant Michels while he was being placed in cell A1-148. Plaintiff pled not guilty. He was convicted as charged,

appealed the conviction to the secretary of corrections and received a losing decision on June 7, 2022.  Petitioner did not appeal this conviction to district court. (Exhibit 12)

### III.     MEDICAL INFORMATION

Plaintiff's medical records from April 1, 2002, through April 30, 2022, are attached, but reflect nothing regarding any injury related to the move from A3 to A1 cellhouse.  Plaintiff alleged that he was touched, but not penetrated, so no physical evidence exists. Plaintiff did scratch himself with his glasses. The record does reflect that plaintiff was put onto crisis level status on April 5, 2022, and remained on that level through the end of the record. (Medical Record Exhibit 16)

### IV.     ADDITIONAL EXHIBITS

Plaintiff did not appear to have exhausted any administrative remedies.  No property claim or grievance was found regarding these allegations.  (Affidavit Exhibits 9 &  10)

Internal Management Policy and Procedure 12-111A regards the use of force by staff.  This document is designated as "Staff Read Only" and cannot be provided to plaintiff for his review.  It is provided to the Court as a sealed document with a protective order.  Plaintiff will not be provided a copy of this policy. (Exhibit 15)

### CONCLUSION

The force used in restraining plaintiff was minimal.  He was restrained in A3 cellhouse and walked to A1 cellhouse cell 148 where he was placed on the bed, his clothing cut off and restraints removed.  The only reason his clothing was cut off was because he would not voluntarily remove them.  The removal of clothing was made necessary because he threatened

self-harm and that is the protocol. Any physical contact with plaintiff was incidental to the purpose of cutting off his clothes.

Plaintiff received and pled guilty to two disciplinary reports, one for threatening to rape the young daughter of an inmate in cellhouse A3 and the other for kicking officer Michels. Both convictions are final.

It doesn't appear plaintiff exhausted his administrative remedies.

A video record of the movement exists, except that no camera covers the inside of cell A1-148. The video record does nothing to bolster plaintiff's claims.

Most importantly, the investigation simply does not support the allegation that plaintiff was beaten and kicked by officers nor does the investigation support that any PREA related event occurred during the cell move. Plaintiff's buttock was touched incidentally by officer Strange's elbow as plaintiff's pants and underwear were cut off, which was made necessary due to plaintiff's refusal to voluntarily remove them. Nothing about that momentary touching was sexual in nature and was incidental to the removal of plaintiff's clothing.

No violation of plaintiff's constitutional rights is seen here.

Respectfully submitted,

 /s/ Jon D. Graves_____
Jon D. Graves #10554

CERTIFICATE OF SERVICE

       I hereby certify that on January 20, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following: Matt Shoger, Assistant Attorney General, Memorial Bldg., 2nd Floor, 120 S.W. 10th Ave., Topeka, KS 66612-1597 and by mailing a copy to:

David Davis #93293  
El Dorado Correctional Facility  
P.O. Box 311  
El Dorado, KS  67042

/s/ Jon D. Graves  
Jon D. Graves

### EXHIBIT LIST

1. Inmate Data Summary sheet for plaintiff David Davis #93293
2. Letter from Counsel dated December 6, 2022, asking plaintiff for additional statement
3. Affidavit of Abriam Lakzadeh
4. Affidavit of Christopher Hoffman
5. Affidavit of James Beardsley
6. Affidavit of Bradley Strange
7. Affidavit of Rebecca Smith
8. Affidavit of Dusty Michels
9. Affidavit of Daniel Womack
10. Affidavit of Ashley Childers
11. Disciplinary Report 22-04-029
12. Disciplinary Report 22-04-030
13. PREA Investigative Report HCF-PR-22-8
14. Security Videos of Forced Cell Move (Plaintiff will be allowed to view, but not possess the CD/DVD for security reasons)
15. Internal Management Policy and Procedure 12-111A (filed under seal and with protective order)(Plaintiff cannot view or possess for security reasons)
16. Plaintiff's full medical record from April 1, 2022, to April 30, 2022 (filed under seal, but will be provided to plaintiff on paper)

/s/ Jon D. Graves                                                       January 20, 2023  
Jon D. Graves                                                                       Date

Subscribed and sworn to before me this 20th day of January, 2023.

   /s/ Rhonda K. Severin
Notary Public

My Commission Expires:  November 18, 2026