IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DAVID JOHN DAVIS,**

    **Plaintiff,**

    v.                                  CASE NO. 22-3153-JWL

**DAN SCHNURR, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER
## TO SHOW CAUSE

Plaintiff brings this pro se action under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. Although Plaintiff is currently an inmate at the El Dorado Correctional Facility in El Dorado, Kansas, his claims arose during his detention at the Hutchinson Correctional Facility ("HCF") in Hutchinson, Kansas. On August 3, 2022, the Court entered a Memorandum and Order and Order to Show Cause (Doc. 5) ("MOSC") granting Plaintiff an opportunity to show cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC. In response, Plaintiff filed an Amended Complaint (Doc. 6) ("AC"). The Court conducted an initial screening of Plaintiff's AC and entered a Memorandum and Order (Doc. 9) ("M&O") directing the officials responsible for the operation of the HCF to prepare a *Martinez* Report. The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 9, at 2.) The *Martinez* Report (Doc. 19) has now been filed, and the Court will screen the Amended Complaint in light of the Report. The Court's screening standards are set forth in the Court's MOSC.

1

## I. Nature of the Matter Before the Court

Plaintiff's AC alleges that he was mistreated by Hutchinson Correctional Facility ("HCF") staff as a result of his status as a sex offender. Plaintiff claims that on April 5, 2022, after Inmate Collins caused him problems, Plaintiff complained to his Unit Team. Officers Smith, Beardsley, Hoffman, Strange, and Michels escorted Plaintiff to MRA A1-148. Plaintiff said he was going to hurt himself, so the escorting officers asked for cutters to remove Plaintiff's clothing. When they arrived at the new cell, Beardsley hit Plaintiff going into the cell. The officers cut Plaintiff's clothes off. In the process, Plaintiff's left hand touched Michels' boot, and Beardsley hit him again. Beardsley was wearing carbon fiber gloves. Before Plaintiff was knocked out, he heard one of the officers say, "You should not rape or touch that girl, you child molester." When he woke up, three (3) of the officers were violently sexually assaulting Plaintiff. Plaintiff asserts violation of this rights under the Eighth Amendment.

Plaintiff claims that there were cameras that should confirm his allegations.

Plaintiff names the following defendants: CO Hoffman; CO Michels, CO Strange; and CO Beardsley. Plaintiff states he has been suffering nightmares as a result of the attack and is in fear for his life.

## II. The *Martinez* Report

The Report disagrees with Plaintiff's description of events in several regards. Most notably, the Report claims that Plaintiff was not violently sexually assaulted by the defendants.

According to the Report, the incident began when Plaintiff threatened to rape the daughter of Inmate Collins, who was housed in the same unit (A3), in response to harassment by Collins. Defendants Beardsley, Hoffman, Michels, and M. Sgt. Rebecca Smith arrived to move Plaintiff to

cell A1-148. Plaintiff was cuffed by Defendant Beardsley. Plaintiff did not want to move and was crying, upset, yelling, and belligerent. He also threatened to harm himself, so when they arrived at cell A1-148, Plaintiff was asked to remove his clothing as a precaution. When he refused, the defendants placed him face down on the bed and cut his clothing off. In the process, Defendant Strange inadvertently touched Plaintiff's bare buttock with his elbow. Plaintiff kicked Defendant Michels in the leg as the officers were leaving the cell. The officers mistakenly left Plaintiff's glasses in the cell with him, and he broke them and cut himself multiple times, which resulted in him being moved to the clinic and put on crisis level.

The Report further states that when Plaintiff was examined by a nurse in the clinic, he reported that he had been touched inappropriately on his genitals by one or more officers. A Prison Rape Elimination Act investigation was commenced as a result. Agent Lakzadeh conducted the investigation. When he interviewed Plaintiff, Plaintiff described being "slammed" by Defendant Beardsley upon arrival at the new cell before his clothing was cut off. He also said that his buttocks were touched during the clothing removal. Plaintiff clarified that he was not claiming any penetration occurred or that his genitals were touched. After his investigation, Agent Lakzadeh found the PREA complaint was unfounded.

The Report includes Plaintiff's medical records for the month of April, 2022. The nurse recorded on April 5, 2022, that Plaintiff had 10-15 self-inflicted superficial lacerations to both forearms. Plaintiff stated he had broken his glasses and cut himself. When asked if he had any other injuries, he said he had pain in his right hand because he punched a cell bar, and he mentioned that an officer struck him in the back of the head and he fell forward hitting his right cheek on the floor. (Doc. 19-16, at 25). He denied any loss of consciousness, and he refused x-rays of his hand

3

and head. (*Id*. at 24, 28). The nurse noted no swelling, bleeding, or bruising on Plaintiff's head or face and no focal neurological deficits. (*Id*. at 28).

On April 6, 2022, Plaintiff was returned to the nurse for a PREA examination. (*Id*. at 54). He reported that Defendants Beardsley, Strange, and Hoffman touched his buttocks and genitals after they cut off his clothes. *Id*. He denied any penetration. On April 11, 2022, a behavioral health records states, "Pt stated that he cannot sleep because he has been having nightmares. Pt said that his nightmares are 3 officers attacking him in a sexual way. Pt stated that he has never had an officer sexual[ly] abuse him but he has nightmares of it." (*Id*. at 120). He again reported similar nightmares on April 18, 2022. (*Id*. at 239).

The Report includes video footage of the cell movement. However, no camera covers the inside of cell A1-148 so there is no video record of what occurred in the cell.

Plaintiff was issued a disciplinary report for threatening or intimidating another inmate by threatening the daughter of Inmate Collins and another disciplinary report for battery of Defendant Michels. He was convicted of both charges and unsuccessfully appealed to the Secretary of Corrections. He did not appeal to the state court.

The Report also states that Plaintiff did not file any grievances regarding his complaints of the use of force on April 5, 2022. (Doc. 19, at 9). Furthermore, Plaintiff indicated in his AC that he did not exhaust his administrative remedies. (Doc. 6, at 6).

### III. Discussion

Courts generally analyze a prisoner's claim of excessive force under the Eighth Amendment's cruel and unusual punishment clause. *Cf. Whitley v. Albers*, 475 U.S. 312, 320-321 (1986); *Sampley v. Ruettgers*, 704 F.2d 491, 494-496 (10th Cir. 1983).[1]  "[A]n excessive force

---

[1]     In *Sampley*, the Tenth Circuit instructed:

4

claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Giron v. Corr. Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999). "An official has a culpable state of mind if he uses force 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Redmond v. Crowther*, 882 F.3d 927, 936–37 (10th Cir. 2018) (quoting *Whitley*, 475 U.S. at 320–21).

The Court's primary concern and reason for ordering the *Martinez* Report was Plaintiff's allegation that he was "violently sexually assaulted" by three defendants. The Report contains no support for this allegation, and Plaintiff's various accounts of the incident prior to filing this lawsuit do not mention a violent sexual assault. Plaintiff's allegation that he was handled roughly during the cell transfer and had his clothing cut off of him fails, without more, to state a claim of violation of the United States Constitution. Not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action."); *Smith v. Iron County*, 692 F.2d 685 (10th Cir. 1982) (A prison guard's use of force against a prisoner is not always a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 831 (10th Cir. 1984) (While an assault by a jailer on his prisoner can give rise to an action under section 1983, a jailer's use of

---

A prison guard's use of force against an inmate is "cruel and unusual" only if it involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). We think that this standard imposes three requirements for an inmate to state a cause of action under the eighth amendment and section 1983 for an attack by a prison guard. First, "wanton" requires that the guard have intended to harm the inmate. Second, "unnecessary" requires the force used to have been more than appeared reasonably necessary at the time of the use of force to maintain or restore discipline. Third, "pain" means more than momentary discomfort; the attack must have resulted in either severe pain or a lasting injury.

*Id*.

force against a prisoner is not always a constitutional violation.); *see also George v. Evans*, 633 F.2d 413, 416 (5th Cir. 1980) ("A single unauthorized assault by a guard does not constitute cruel and unusual punishment."); s*ee DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (holding that prison guard's "simple act of shoving" inmate into a door frame was not an Eighth Amendment violation.); *Suits v. Lynch*, 437 F. Supp. 38, 40 (D. Kan. 1977).  In *Snyder v. Spilde*, the District Court of Colorado considered an incident similar to the one upon which Plaintiff's claim is based and found as follows:

> Merely grabbing and twisting Mr. Snyder's arms does not allege a constitutional violation.  *See e.g., Norton v. The City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (dismissing claim in which prison guards were alleged to have injured prisoner by grabbing him around his neck and twisting it because the guards' actions were not objectively harmful enough to establish a constitutional violation); *Reed v. Smith*, No. 97-6341, 1999 WL 345492, at *4 (10th Cir. 1999) (dismissing excessive force claim based on allegations that prison officials grabbed inmate, tried to ram him into a wall, and dragged him while walking him through the prison); *Marshall*, 415 Fed. App'x at 853–54 (dismissing excessive force claim based on allegations that corrections officer dug his fingernails into prisoner's arm without cause to do so resulting in redness and bruising). *Accord De Walt v. Carter*, 224 F.3d 607, 610–11 (7th Cir. 2000) (holding that shoving a prisoner into a doorframe, which resulted in bruising on his back, did not state a constitutional violation); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (holding that bumping, grabbing, elbowing, and pushing a prisoner was "not sufficiently serious or harmful to reach constitutional dimensions."); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (pushing cubicle-cell wall onto prisoner's leg, causing bruises, was insufficient use of force to state a constitutional violation); *Olson v. Coleman*, 804 F. Supp. 148, 149–50 (D. Kan. 1982) (single blow to prisoner's head while escorting him into prison, causing contusion, was de minimis use of force not repugnant to conscience of mankind).

*Snyder v. Spilde*, No. 15-cv-2169-GPG, 2016 WL 1059612, at *3–4 (D. Colo. March 17, 2016).

In addition, the Report provides that Plaintiff has not exhausted his administrative remedies with respect to the subject matter of the claims he makes in the AC.  An inmate is required by the

Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted). "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249; *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (quoting *Jones*, 549 U.S. at 211)). An inmate exhausts by complying with "an agency's deadlines and other critical procedural rules." *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607 F.3d at 1249 (citing

*Woodford*, 548 U.S. at 90). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). The issue of Plaintiff's failure to exhaust his available administrative remedies before filing his lawsuit must be determined before reaching the merits of his lawsuit. *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court") (citation omitted); *see also Jernigan*, 304 F.3d at 1032 (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim).

For Kansas state prisoners, the administrative remedies require the inmate to seek an informal resolution with personnel who work with the inmate on a daily basis. K.A.R. § 44–15–101(b). If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections. K.A.R. § 44–15–101(d). The procedure to follow at each level is described in detail in Kan. Admin. Regs. § 44–15–102; *see also Garza v. Correct Care Solutions*, 2011 WL 2580299, at *2 (D. Kan. 2011), *aff'd* 451 F. App'x 775 (10th Cir.) (granting summary judgment for failure to exhaust claims against Correct Care Solutions where plaintiff failed to allege that he sought relief on his claims first through his unit team, then the warden, and finally from the Secretary of Corrections).

Based on the Report, it appears that Plaintiff failed to exhaust his administrative remedies before filing this action.

## IV.  Conclusion

In light of the *Martinez* Report and on further review of the Amended Complaint, the Court is considering dismissal of this matter for failure to state a claim on which relief can be granted and for failure to exhaust administrative remedies.  Plaintiff will be given an opportunity to respond to the *Martinez* Report and to show good cause why dismissal should not be entered.  Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **March 24, 2023,** in which to respond to the *Martinez* Report and to show good cause why this action should not be dismissed for failure to state a claim and for failure to exhaust.

**IT IS SO ORDERED**.

**Dated February 24, 2023, in Kansas City, Kansas.**

                                              **S/   John W. Lungstrum**
                                              **JOHN W. LUNGSTRUM**
                                              **UNITED STATES DISTRICT JUDGE**